David Krieger, Esq.
Nevada Bar No. 9086
Shawn Miller, Esq.
Nevada Bar No. 7825
KRIEGER LAW GROUP, LLC
2850 W. Horizon Ridge Parkway
Suite 200
Henderson, Nevada 89052
Phone: (702) 848-3855
Email: dkrieger@kriegerlawgroup.com
Email: smiller@kriegerlawgroup.com

Attorney for Plaintiff
*Leann Niggl*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LEANN NIGGL, | Civil Action No.: _____ |
| Plaintiff, | |
| v. | |
| RSI ENTERPRISES, INC, | **COMPLAINT** |
| Defendant. | |

For this Complaint, Plaintiff Leann Niggl, by undersigned counsel, states as follows:

**JURISDICTION**

1. This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"), and the

harassment of Plaintiff by Defendant in its illegal efforts to collect a consumer debt. Jurisdiction is therefore proper in this Court pursuant to 28 U.S.C. § 1331.

2. This action also arises out of Defendant's violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA") by negligently, knowingly, and/or willfully placing automated calls to Plaintiff's cellular phone without consent, thereby violating the TCPA.

3. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367.

4. Venue is proper in the U.S. District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b), as Defendant transacts business in the State of Nevada.

## PARTIES

5. Plaintiff Leann Niggl ("Plaintiff") is an adult individual residing in Las Vegas, Nevada, and is a "consumer" as the term is defined by 15 U.S.C. § 1692a(3), and a "person" as defined by 47 U.S.C. § 153(39).

6. Defendant RSI Enterprises, Inc ("RSI") is headquartered in Arizona and is doing business in the State of Nevada, and is, and at all times mentioned herein was, a corporation and is a "person," as defined by 47 U.S.C. § 153 (39).

7. Upon information and belief, RSI is licensed as a "debt collector" and is in the business of purchasing debts owed to third parties or collecting debts owed to third parties and regularly attempts to collect those debts.

8. RSI uses mail, credit reporting and instrumentalities of interstate commerce to attempt to collect the debts either owed to another creditor or purchased from another creditor, and is a "debt collector" as the term is defined by 15 U.S.C. § 1692a(6).

## RSI'S VIOLATIONS OF THE FDCPA

1. Plaintiff allegedly incurred a financial obligation ("Debt") to Tucson Medical Center ("TMC"). The Debt was related to medical expenses Plaintiff incurred in 2019.

2. The Debt arose from services provided by TMC which were primarily for family, personal, or household purposes, and meets the definition of a "debt" under 15 U.S.C. § 1692a(5).

3. The Debt was purchased, assigned, or transferred to RSI for collection, or RSI was employed by TMC to collect the Debt.

4. RSI attempted to collect the Debt and, as such, engaged in "communications" as defined in 15 U.S.C. § 1692a(2).

5. On or about September 24, 2020, Plaintiff filed for Chapter 7 bankruptcy in the District of Nevada. Plaintiff's case was assigned docket number

20-14737-nmc ("Bankruptcy").  The Court can take judicial notice of this at Bankruptcy ECF No. 1.[1]

6. TMC was listed as a creditor in the Bankruptcy, and the Debt was scheduled accordingly.  See Bankruptcy ECF No. 13.

7. TMC received notice of the Bankruptcy through the Court's BNC noticing system.  See Bankruptcy ECF No. 10.

8. On December 29, 2020, the Court granted Debtor a discharge.  See Bankruptcy ECF No. 18.

9. Notice of Debtor's discharge was mailed to TMC through the Court's BNC noticing system.  See Bankruptcy ECF No. 19.

10. A a result of Plaintiff's discharge, Plaintiff no longer had any legal liability for the Debt, and TMC (and any successors) could take no action to collect on the Debt.

11. Despite Plaintiff's discharge, TMC assigned the Debt to RSI.  RSI then began a campaign to collect on the Debt.

12. In June 2021, nearly six months after Plaintiff's discharge, RSI began contacting Plaintiff regarding the Debt.

13. Upon information and belief, RSI's initial calls were autodialed.  On

---

[1] Plaintiff requests the Court take Judicial Notice of Debtor's Bankruptcy proceeding and all documents filed in the CM/ECF and PACER pursuant to Federal Rules of Evidence (FRE) 201.

at least one of the calls, RSI left an automated voicemail, in which it attempted to collect the Debt from Plaintiff.

14. In addition to its telephone calls, RSI sent Plaintiff letters in which it demanded she pay a total of $1,155.66, as seen below.

| Cliref # | Serv Date | Balance |
|---|---|---|
| 702907609 | 03-28-19 | 184.74 |
| 702920766 | 04-14-19 | 565.62 |
| 702922503 | 04-14-19 | 249.15 |
| 702918424 | 04-09-19 | 156.15 |
| Total | | 1155.66 |

15. Further, the letters RSI sent Plaintiff contained implicit threats RSI would report the Debt to credit reporting agencies if Plaintiff dd not pay, as seen below.

Tucson Medical Center assigned this balance to RSI Enterprises, Inc. for collection on 06-18-21. RSI Enterprises, Inc. on behalf of Tucson Medical Center reports to the three major credit bureaus. Please remit payment for the total amount owing above, along with the bottom portion of this letter to RSI Enterprises, Inc.

16. Plaintiff has suffered and continues to suffer actual damages as a result of RSI's unlawful conduct.

17. As a direct consequence of RSI's acts, practices, and conduct, Plaintiff suffered and continues to suffer from humiliation, anger, anxiety, emotional distress, fear, frustration, and embarrassment.

18. Plaintiff also feels the benefit of the Bankruptcy has been lost, as RSI has continued attempting to collect the Debt after her discharge.

## RSI'S VIOLATIONS OF THE TCPA

19. Prior to filing the instant complaint, Plaintiff received numerous calls

from RSI.

20. Upon information and belief, RSI employs an automatic telephone dialing system ("ATDS") which meets the definition set forth in 47 U.S.C. § 227(a)(1).

21. RSI or its agents contacted Plaintiff on Plaintiff's cellular telephone number ending in "9382" via an ATDS as defined by 47 U.S.C. § 227(a)(1), as prohibited by 47 U.S.C. § 227(b)(1)(A).

22. Moreover, the calls were made using a pre-recorded voice.

23. In the calls Plaintiff did answer, there would be a short pause lasting about two to three seconds between the time the calls were answered and the time a live agent was introduced as a representative from RSI.

24. Upon information and belief, based on the pause and lack of prompt human response during the phone calls in which Plaintiff answered, RSI used a predictive dialing system to place calls to Plaintiff.

25. "A predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists [caller] in predicting when an [agent] will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." Meyer v. Portfolio Recovery Associates, LLC, 707 F.3d 1036, 1043 (9th Cir. 2012).

26. Upon information and belief, the predictive dialing system employed by RSI transfers the call to a live agent once a human voice is detected, thus resulting in a pause after the called party speaks into the phone.

27. As described above, RSI was, upon information and belief, calling Plaintiff to collect the Debt. Plaintiff never granted RSI any consent to call her via an ATDS, as Plaintiff had no relationship with RSI.

28. Moreover, RSI did not have prior express consent to place any automated or prerecorded calls to Plaintiff on Plaintiff's cellular telephone at any time.

29. However, RSI placed calls to Plaintiff's cellular telephone without consent using an ATDS, in violation of the TCPA.

30. RSI's ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

31. The telephone number RSI used to contact Plaintiff was and is assigned to a cellular telephone service as specified in 47 U.S.C. § 227(b)(1)(A)(iii).

32. RSI's calls to Plaintiff's cellular telephone were not for "emergency purposes."

33. Pursuant to the TCPA, the burden is on RSI to demonstrate it had prior express consent to call Plaintiff's cellular phone with an ATDS.

34.     While very minor, Plaintiff suffered actual harm and loss, since each of the unwanted calls depleted Plaintiff's cell phone's battery, and the cost of electricity to recharge the phone is a tangible harm.  While small, this cost is a real one, and the cumulative effect can be consequential, just as is true for exposure to X-rays resulting from RSI's unwanted phone calls to Plaintiff's cell phone.

35.     However, Plaintiff also suffered from an invasion of a legally protected interest by placing calls to Plaintiff's personal phone line when RSI had no right to do so, resulting in an invasion of Plaintiff's right to privacy.  The TCPA protects consumers from precisely this behavior.

36.     Plaintiff has a common law right to privacy.  E.g., Samuel D. Warren & Louis D. Brandeis, The Right to Privacy, 4 Harv. L. Rev. 1155, 193 (1890). Congress sought to further protect that right by enacting the TCPA.

37.     "[W]hen a person must endure the bother of unwanted calls in the privacy of her home, her harm is similar to other traditional injuries that courts have long recognized, such as invasion of privacy and nuisance."  Toldi v. Hyundai Capital Am., No. 2:16-CV—01877-APG-GWF, 2017 WL 736882, at *2 (D. Nev. Feb. 23, 2017).

38.     Plaintiff was also personally affected, since Plaintiff felt Plaintiff's privacy had been invaded when RSI placed automated calls to Plaintiff's phone line without any consent to do so.

39. The injury suffered by Plaintiff is concrete because RSI's violations caused Plaintiff to suffer an invasion of privacy.

## **COUNT I**

## **VIOLATIONS OF THE FDCPA**
## **15 U.S.C. § 1692, et seq.**

40. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

41. Defendant's conduct violated 15 U.S.C. § 1692d in that Defendant engaged in behavior the natural consequence of which was to harass, oppress, or abuse Plaintiff in connection with the collection of a debt.

42. Defendant's conduct violated 15 U.S.C. § 1692e in that Defendant engaged in false, deceptive, or misleading behavior in connection with the collection of a debt.

43. Defendant's conduct violated 15 U.S.C. § 1692e(2) in that Defendant misrepresented the amount of the Debt owed by Plaintiff and attempted to have Plaintiff pay more than the Debt owed to Creditor.

44. Defendant's conduct violated 15 U.S.C. § 1692e(8) in that Defendant communicated or threatened to communicate false credit information, including the failure to communicate that the Debt was "disputed", in an attempt to collect a debt.

45. The foregoing conduct relating to these FDCPA claims is not predicated on a violation of a discharge order, nor does Plaintiff seek relief for violation of a discharge order. Conversely, these FDCPA claims are predicated on Defendant's misrepresentations of the amount owed through Defendant's collection communications and debt collection efforts regarding the Debt.

46. Unlike the plaintiff in Walls v. Wells Fargo Bank, N.A., 276 F.3d 502 9th Cir. 2002), Plaintiff herein is not alleging under this Count that Defendant engaged in unfair and unconscionable collection practices, which are forbidden by the FDCPA, by trying to collect a debt in violation of the discharge injunction. Instead, Plaintiff raises an entirely different claim based on Defendant's misrepresentation of the amount actually owed on the Debt, which is a legally and factually distinct claim from Walls' allegations of FDCPA violations flowing from a creditor's discharge violations. Neither is Plaintiff seeking redress under any provision of the Bankruptcy Code as none exists to provide a remedy for Defendant's collection misrepresentations.

47. Plaintiff is not seeking a private right of action under the Bankruptcy Code as there is no independent basis under the Bankruptcy Code to provide redress to Plaintiff for Defendant's misrepresentation of the correct and lawful amount of the Debt.

48. Plaintiff also does not suggest that the Bankruptcy Code may be used

to create substantive rights for a private right of action thereunder for Defendant's FDCPA collection violations. These FDCPA claims are remote from the Bankruptcy Code and operate as their own independent claims under non-bankruptcy law.

49. The foregoing acts and omissions of Defendant constitute numerous and multiple violations of the FDCPA, including every one of the above-cited provisions.

50. Plaintiff is entitled to damages as a result of Defendant's violations.

51. Plaintiff has been required to retain the undersigned as counsel to protect his legal rights to prosecute this cause of action, and is therefore entitled to an award of reasonable attorneys' fees plus costs incurred.

## COUNT II.

### NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, (47 U.S.C. § 227, *et seq.*)

52. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

53. Defendant negligently placed multiple automated calls to a cellular number belonging to Plaintiff without Plaintiff's prior express consent.

54. Each of the aforementioned calls by Defendant constitutes a negligent violation of the TCPA.

55. As a result of Defendant's negligent violations of the TCPA, Plaintiff is entitled to an award of $500.00 in statutory damages for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B).

56. Additionally, Plaintiff is entitled to and seek injunctive relief prohibiting such conduct by Defendant in the future.

## COUNT III

### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, (47 U.S.C. § 227, *et seq.*)

57. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

58. Defendant knowingly and/or willfully placed multiple automated calls to a cellular number belonging to Plaintiff without Plaintiff's prior express consent.

59. Each of the aforementioned calls by Defendant constitutes a knowing and/or willful violation of the TCPA.

60. As a result of Defendant's knowing and/or willful violations of the TCPA, Plaintiff is entitled to an award of treble damages up to $1,500.00 for each call in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

61. Additionally, Plaintiff is entitled to seek injunctive relief prohibiting such conduct by Defendant in the future.

# COUNT IV

## DEFENDANT'S VIOLATIONS OF NEVADA'S DECEPTIVE TRADE PRACTICES ACT
## (NRS 598.0918)

62. Plaintiff repeats and realleges the above paragraphs of this Complaint and incorporates them herein by reference.

63. "Solicitation" means "the act of… seeking to obtain" something – in this case money.  *Solicitation*, Black's Law Dictionary (2d Pocket Ed. 2001).

64. Here, Defendant solicited Plaintiff to seek or obtain money from Plaintiff.

65. On March 13, 2001, Assembly Bill 337 (AB 337) was introduced to the Nevada State Legislature.  AB 337 revised Nevada's Deceptive Trade Practices statutes codified at NRS 598 et seq.

66. As expressed by Marilyn Skibinski, Regulatory Analyst, Bureau of Consumer Protection, AB 337 was enacted to "provide[] additional protection for consumers."  *See Minutes of the Meeting of the Assembly Committee on Commerce and Labor*, 71st Session, April 4, 2001, page 1082, which can be viewed at http://www.leg.state.nv.us/Division/Research/Library/LegHistory/LHs/2001/AB337,2001.pdf ("AB 337 Minutes").

67. Further, AB 337 was specifically intended to apply to companies (like Defendant) using "automatic calling" or automated dialing systems.  As Ms.

Rushton stated in response to Senator Maggie Carlton, "[that] is exactly what [AB 337 is intended to do." *Id.* at page 4093.

68. In specific, AB 337 made it a deceptive trade practice to, during a solicitation by telephone, to:

   a. Repeatedly or continuously conduct the solicitation or presentation in a manner that is considered by a reasonable person to be annoying, abusive or harassing;
   b. Solicit a person by telephone at his or her residence between 8 p.m. and 9 a.m.
   c. Block or otherwise intentionally circumvent any service used to identify the caller when placing an unsolicited telephone call; or
   d. Place an unsolicited telephone call that does not allow a service to identify the caller by the telephone number or name of the business, unless such identification is not technically feasible.

69. Defendant repeatedly and continuously placed telephone calls to Plaintiff's residential phone (which is also Plaintiff's cellular phone) to solicit money from Plaintiff in a manner that would be considered annoying, abusive, or harassing by a reasonable person.

70. Specifically, Defendant placed calls to Plaintiff's cell phone even though Defendant had neither right nor reason to do so. Such conduct is unquestionably harassing and annoying.

71. As a direct consequence of Defendant's harassing phone calls, acts, practices, and conduct, Plaintiff suffered and continues to suffer from anger, anxiety, emotional distress, frustration, rage, headaches, an upset stomach, heart palpitations, and has otherwise been totally annoyed by Defendant's intrusive and

illegal phone calls. Plaintiff has also lost the use of personal and family time while enduring these frustrations, as well as lost time and minutes from cell phone use, for which Plaintiff is charged a fee.

72. Defendant's violations of NRS 598.0918 constitute violations of NRS 41.600 and Plaintiff is entitled to relief under NRS 41.600.

## COUNT V

### INVASION OF PRIVACY
### INTRUSION INTO SECLUSION

73. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

74. Nevada recognizes the common law tort for an invasion of privacy of intrusion into seclusion finding "[r]epeated and continuous calls in an attempt to collect a debt give rise to a claim for intrusion upon seclusion." *Peatrowsky v. Persolve*, No. 2:12-cv-00935-JAD-VCF, 2014 U.S. Dist. LEXIS 38320, at *26-27 (D. Nev. Mar. 24, 2014).

75. Further, Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

76. Defendant and/or its agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion, and/or private concerns or affairs of this Plaintiff, namely, by repeatedly and unlawfully inundating Plaintiff with phone calls as discussed above and thereby invaded Plaintiff's privacy as expressed in the foregoing.  To recap however, these invasions included a persistent disregard of Plaintiff's demands that Defendant cease these intrusive communications.  Indeed, Plaintiff's attempts to curb Defendant's collection communications fell on deaf ears.

77. As a result, Defendant flagrantly disrespected Plaintiff's right to live peaceably and in solitude.  Defendant simply knew better, but as a business policy disregards rights of consumers like Plaintiff regardless of the personal costs to Plaintiff's common law right to solitude and peace.

78. Plaintiff had a reasonable expectation of privacy in her solitude, seclusion, private concerns, and/or affairs.

79. Defendant's conduct in engaging in the above-described illegal collection conduct against this Plaintiff, resulted in multiple intrusions and invasions of privacy which occurred in a way that would be highly offensive to a reasonable person in that position.

80. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant,

as well as punitive damages.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant, awarding Plaintiff:

1. actual damages including, but not limited to, the emotional distress Plaintiff has suffered (and continues to suffer) as a result of the intentional, reckless, and/or negligent FDCPA violations pursuant to 15 U.S.C. § 1692k(a)(1);

2. statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A);

3. injunctive relief prohibiting such violations of the TCPA by Defendant in the future;

4. statutory damages of $500.00 for each and every call made in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(B);

5. treble damages of up to $1,500.00 for each and every call made in violation of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(C);

6. actual damages including, but not limited to, the emotional distress Plaintiff has suffered (and continues to suffer) as a result of the intentional, reckless, and/or negligent violations of NRS 598.0918 as

permitted under NRS 41.600;

7. actual damages and punitive damages for Defendant's privacy violations;

8. punitive damages; and

9. any other and further relief that the Court may deem just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: July 2, 2021

                                    Respectfully submitted,

By   /s/ David Krieger, Esq.
        David Krieger, Esq.
        Nevada Bar No. 9086
        Shawn Miller, Esq.
        Nevada Bar No. 7825
        KRIEGER LAW GROUP, LLC
        2850 W. Horizon Ridge Parkway
        Suite 200
        Henderson, Nevada 89052
        Phone: (702) 848-3855
        Email: dkrieger@kriegerlawgroup.com
        Email: smiller@kriegerlawgroup.com